CARPENTER v. LITTLE ROCK.

Opinion delivered December 11, 1911.

1. MUNICIPAL CORPORATIONS—HEALTH REGULATIONS.—Ordinances regulating the sale of milk and fresh meats are a valid exercise of the police power delegated by Kirby's Digest, sections 5461, 5648, to cities to protect the health of such corporations and the inhabitants thereof. (Page 242.)

2. SAME—INSPECTION OF MILK AND MEATS—REPEAL OF STATUTE.—The act of May 31, 1911, prohibiting city councils from hindering, interfering with, or imposing a license upon, any person in the selling or offering for sale of any fruits, vegetables, or any products of the farm, including meats from domestic animals or livestock, did not take away from cities

the power conferred by previous statute to require milk and meats to be inspected before they are sold. (Page 243.)

3. STATUTES—REPEALS BY IMPLICATION.—Repeals by implication are not favored, and to produce such a result the two acts must be upon the same subject, and there must be a plain repugnancy between their provisions, or the later act must cover the entire subject of the earlier act. (Page 243.)

4. MUNICIPAL CORPORATIONS—OCCUPATION TAX.—While a municipal corporation can not impose an occupation tax or license for revenue purposes merely, it may impose a license fee as compensation for issu ing the license, for keeping the record, and for municipal supervision of the particular business. (Page 244.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

J. W. Carpenter instituted an action in the Pulaski Chancery Court against the city of Little Rock, in which he sought to enjoin the enforcement of a milk ordinance. His complaint alleges in substance that he is a citizen and taxpayer of Pulaski County, and is a dairyman selling milk in the city of Little Rock from his own cows. That the city council passed ordinance No. 1711, entitled, "An Ordinance to Protect the Health of the Citizens of Little Rock by Providing for Milk and Dairy Inspection, and providing a penalty for violation, and for other purposes." That said ordinance is unreasonable; that it is a revenue measure; that it takes property without due proces of law, and is in violation of the statutory laws of the State.

J. H. Bilby instituted a similar action against the city, alleging that he is a producer of domestic meats which he sells in the city, and that as such he is not subject to be licensed, hindered, interfered with or obstructed in regard to the sale thereof. That the meat inspection ordinance passed by the city council, and of which he complains, was beyond the power of the city to enact. The ordinance in question is No. 1706, and is entitled "An Ordinance to Protect the Health of the Citizens of Little Rock by prohibiting the sale of contaminated foods, providing for the inspection of all meats and other articles of food and fixing a penalty for violation." The prayer of his complaint is for an injunction against the enforcement of the ordinance.

The city filed an answer in each case, in which it admitted

the passage of the ordinances in question, and that plaintiffs were respectively a milk producer and meat dealer, selling his products in the city. Each answer alleged that the ordinance was passed for the sole purpose of protecting and promoting the health of the citizens of Little Rock, and that the fees and expenses mentioned therein were imposed to pay for the expenses incurred in enforcing said ordinance and carrying out its provisions. Each answer also denied that the ordinance was unreasonable, or that it was passed for the purpose of revenue, or that it was beyond the power of the city council to pass the same.

The plaintiff in each case demurred to the answer, on the ground that the city had no power to pass the ordinance in question and because it conflicted with the provisions of an act of the General Assembly of the State of Arkansas approved May 31, 1911, and entitled "An Act to protect producers in selling their products in the State of Arkansas."

The court overruled the demurrer in each case, and, the plaintiff in each case electing to stand on his demurrer, his complaint was dismissed for want of equity. The cases are here on appeal.

*Carmichael, Brooks & Powers,* for appellant.

1. The tendency of legislation, both Federal and State, is, and has been, to favor the farming and producing classes. As illustrative of this tendency in State legislation, see Kirby's Digest, § § 5529, 6875, 5100, 4358-4361, and acts 1905, p. 489, and finally the act involved here, acts 1911, p. 347. "Regulate," means in its legal technical sense, the right to license. If the statute contains words that prohibit regulation, then there can be no regulation, and the ordinance complained of conflicts with the statute and must fall. Art. 12, § 4, Const. 1874.

Where an ordinance is in conflict with a statute of the State, the court must declare the ordinance invalid. 86 Ark. 1.

The words "hinder," "interfere" and "obstruct" used in the statute should be given their ordinary meaning. See Century Dict., "hinder;" 28 Fed. Cas. 631, 633, "obstruct," "hinder" and "prevent;" 6 Words & Phrases, 4890; 4 *Id.* 3710; 24 Atl. 528, 84 Me. 55, "interfere."

2. A municipal corporation has only such power as is specifically conferred upon it by statute—it has no inherent

police power. 27 Ark. 469; 3 Ark. 114; 45 Ark. 455; *Id.* 338; 71 Ark. 8; Kirby's Digest, § 5460; 31 Ark. 462; 33 Ark. 497; *Id.* 516; 35 Ark. 61; 37 Ark. 345; 52 Ark. 432.

In every case coming before this court, the city, where the court has upheld the ordinance, has been able to point to the express grant of power in an act of the Legislature; and where it has been unable to do so, the power has been denied. 88 Ark. 263; 96 Ark. 199; 76 Ark. 250; 88 Ark. 353; 74 Ark. 194, 199; 90 Ark. 128; 87 Ark. 12; 85 Ark. 396.

*Harry C. Hale,* City Attorney, and *H. M. Armistead* and *Ashley Cockrill,* special counsel, for appellee.

1. An incorporated town or city, with governmental powers delegated in general terms, possesses from the mere fact of incorporation a police power, usually termed inherent, but more properly called an implied or incidental police power; and the most appropriate subject of its police power is the power and duty to adopt and enforce health regulations. 30 Am. St. Rep. 214; 28 Cyc. 709; *Id.* 720; *Id.* 734; 2 Minn. 190; 72 Am. Dec. 89; 64 Ark. 636; Dillon, Mun. Corp. § 369; 109 Pac. 379; 93 N. E. 73; 55 Conn. 378; 43 Ala. 398, 400; 38 Ga. 542; 10 La. Ann. 227. For cases upholding meat, milk ordinances and the like under the general welfare clause alone, see 66 S. E. (Ga.) 990; 43 Cal. 242; 44 Kan. 607, 10 L. R. A. 520; 112 N. Y. S. 936; 124 Ill. 359, 16 N. E. 260; 14 N. Y. 356; 73 Pac. 987; McQuillin on Mun. Ord. § 434. Under the rule laid down in 71 Ark. 8, this power and duty of a city to protect the health of its citizens may be called an inherent power, or a power "necessarily or fairly implied in or incidental to the powers expressly granted," or a power "essential to the declared objects and purposes of the corporation." The power exists, independent of statutory authority.

2. But in this State there are ample statutory provisions delegating to cities power to pass sanitary ordinances. Kirby's Digest, § § 5436, 5438, 5460, 5461, 5525, 5528, 5648, subdiv. 4. See also 65 Ark. 613; 64 Ark. 609; *Id.* 424; 83 Ark. 351; 96 Ark. 199; Dillon, Mun. Corp. § 384; 1 Gill. (Md.) 264; 83 Ark. 431; 88 Ark. 353. The power to regulate the carrying on of any trade, business or vocation of a tendency dangerous to health, is sufficient authority from the Legislature,

and to hold to the contrary would be to overrule *Trigg* v. *Dixon*, 96 Ark. 199, and other similar cases.

3.   The power of the city to regulate health of the community has not been taken away or restricted by the Legislature. In determining whether the Legislature has destroyed or limited this power of the city, the courts will construe any act attempting to do so strictly in order to uphold the power of the city to protect the health of its inhabitants.   The courts regard health ordinances as the exercise of the most important function of a city.   28 Cyc. 709;  109 Pac. 379;  83 Ark. 431;  40 N. Y. 273;  80 Ala. 579, 60 Am. Rep. 130;  McQuillin on Mun. Ord. § 439;  52 N. E. 44;  36 Cyc. § 1173.   The act of 1911 applies to "fruits, vegetables, or any products of the farm," and affects only those who produce them.   Its plain intention is to cover things raised by a farmer from the soil, like fruits and vegetables, and does not include milk from domestic animals. That it was not intended to include milk is shown by the fact that, in order to include meats, the Legislature employed the phrase, "including meats from domestic animals or live stock."

The act does not impose any restriction upon the city in the exercise of the police power delegated to it for the protection of the health of its citizens.   101 Va. 473, 99 Am. St. Rep. 918;  2 Humph. (Tenn.) 61.   For cases where similar ordinances regulating the sale of milk are upheld, see 201 U. S. 633;  178 N. Y. 617;  175 N. Y. 440, 108 Am. St. Rep. 781;  199 U. S. 552;  167 Mo. 654;  99 Am. St. Rep. 614;  101 Va. 473, 99 Am. St. Rep. 918;  66 Minn. 166, 61 Am. St. Rep. 399;  80 Md. 164, 45 Am. St. Rep. 339;  42 Neb. 223;  47 Am. St. Rep. 697; 84 N. E. (Ill.) 913;  129 N. W. 518;  133 Ga. 689.

4.   To exempt producers from health regulations relating to the sale of food in cities would create an illegal discrimination. 37 Ark. 362;  75 Ark. 542;  101 Ill. 61;  148 Pa. St. 482;  38 L. R. A. 677;  184 U. S. 540;  123 N. W. 823;  Cooley on Taxation, 344.

HART, J., (after stating the facts.)   These two cases were submitted by consent upon the same abstracts and briefs, and considered by the court at the same time.

Section 5461 of Kirby's Digest, commonly known as the general welfare clause, gives to municipal corporations the power to make and publish such by-laws and ordinances, not

inconsistent with the laws of the State, as to them shall seem necessary to provide for the safety, preserve the health, etc., of such corporations and the inhabitants thereof.

Section 5648 of Kirby's Digest provides that, in order to better provide for the public welfare, comfort and convenience of their inhabitants, certain enlarged and additional powers are conferred upon cities of the first class.

Subdiv. 4 of the section authorizes such cities "to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to morals, health or safety."

The importance of securing to a community pure and wholesome food has led to the very general enactment of statutes and ordinances regulating the sale of such products. Impure and adulterated foods, especially milk and meats, are a prolific source of disease and a menace to the public health. Therefore, it is generally held that ordinances regulating the sale of milk and fresh meats are a valid exercise of the police power delegated to cities to protect health and prevent fraud. Many of the authorities on the subject are cited by counsel for appellee in their briefs, and many more will be found in the case notes to the following: *St. Louis* v. *Liessing,* (Mo.) 1 L. R. A. (N. S.) 918, 4 Am. & Eng. Ann. Cas. 112; *Commonwealth* v. *Wheeler,* (Mass.) 18 Am. & Eng. Ann. Cas. 319; *New Orleans* v. *Charouleau,* (La.) 15 A. & E. Ann. Cas. 46; *St. Louis* v. *Schuler,* (Mo.) 1 L. R. A. (N. S.) 928; *St. Louis* v. *Grafeman Dairy Co.,* 1 L. R. A. (N. S.) 936; *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 15 A. & E. Ann. Cas. 276.

But counsel for appellants contend that the power delegated to cities to enact such ordinances under the sections of the statute above referred to was taken away by the passage of act No. 372 by the General Assembly of 1911. The act reads as follows:

"Section 1. That hereafter it shall be unlawful for any city council, member of an incorporation, corporation, city officer, or any other person either in an incorporated city or elsewhere, to hinder, or to interfere, or to impose a tax or a license, or to obstruct in any manner whatsoever, any person in the selling or the offering for sale any fruits, vegetables, or

any products of the farm, including meats from domestic animals or live stock.

"Sec. 2. The benefits of this act shall accrue only to those who produce the above mentioned articles of produce and offer them for sale, either in person or through a legally authorized agent.

"Sec. 3. All laws and parts of laws in conflict with this act are hereby repealed.

"Sec. 4. This act, being necessary for the immediate peace, health and safety of the people of the State of Arkansas, is to take effect and to be in force from the date of passage.

"Approved May 31, 1911."

There is no express repeal of the sections of the statutes under which the ordinances in question were passed, and repeals by implication are not favored. "To produce this result, the two acts must be upon the same subject, and there must be a plain repugnancy between their provisions; in which case the latter act, without the repealing clause, operates, to the extent of repugnancy, as a repeal of the first. Or, if the two acts are not in express terms repugnant, then the latter act must cover the whole subject of the first and embrace new provisions, plainly showing that it was intended as a substitute for the first." *Coats* v. *Hill*, 41 Ark. 149.

It is manifest that the act of May 31, 1911, does not cover the whole subject of the power of cities to prevent and regulate the carrying on of any trade, business or vocation of a tendency dangerous to the morals, health or safety of the inhabitants thereof, and there is no indication that the Legislature intended to abandon the policy of delegating to cities its police power in this respect.

The question then is, is there such a manifest repugnancy between the statutes that the latter operates as a repeal of the former?

It is not plain just what object the Legislature had in view when it passed the statute in question. The statute forbids the imposition of a tax or license. It was already the settled law of the State that no tax could be imposed upon an occupation; and that a license for revenue as well as regulation could not be required. *Stamps* v. *Burk*, 83 Ark. 351; *Waters-*

*Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509; *Helena* v. *Miller,* 88 Ark. 263; 96 Ark. 199.

We have uniformly held that the power to regulate includes the power to license; and that the license fee demanded is not a tax upon an occupation, but a compensation for issuing the license, for keeping the record, and for municipal supervision over the business.

Judge Dillon says: "To regulate is to govern by or subject to certain rules or restrictions. It implies a power of restriction and restraint certainly within reasonable limits as to the manner of conducting a specific business, and also as to the building or erection in or upon which the business is to be conducted. By virtue of the power to regulate it has been held that the city council may by ordinance prohibit the carrying on of a business within certain specified portions of the city. By virtue of a similar power, it has been held that it is within the authority of the common council reasonably to limit the manner by prohibiting one or more methods. By the weight of authority, although the decisions are not uniform, another form of regulation which may be prescribed by virtue of the power to regulate is the power to require a license to follow particular trades or occupations with an accompanying prohibition in the event of failure to procure the license." 2 Dillon on Municipal Corporations, (5 ed.), § 665. Our own cases are cited to sustain the latter proposition.

The language of the statute under consideration is "to hinder, or to interfere, or to impose a tax, or a license, or obstruct in any manner whatsoever." We think the Legislature intended by the act to prevent municipal corporations from passing an ordinance requiring a license as a prerequisite to carrying on the business, and from hindering or obstructing the persons mentioned in the statute in the manner or method of selling their produce. That is to say, in the present case, the city could not demand a license as a means of regulating the business, and could not pass an ordinance preventing producers from going about the streets of the city to sell their products, or to otherwise limit or restrict them as to the time, place or method of making such sales. We do not think, however, that the statute took away all the powers of the city in respect to the regulation of the sale of meats and milk. It still has the power to

enact ordinances to prevent or regulate the sale of impure articles of food. The purpose of the ordinances is to protect the inhabitants of the city from the sale of impure milk and meats. The city has the power to do this.

As a means to the end in view, it is necessary to have proper inspection of the milk and meat before it is sold, and the fee required to be paid the inspector is not required as a license or prerequisite to the right of the seller to carry on his business, but it is to cover the cost of inspection. It is a fee for services rendered by the inspector. The charge is made for specific services rendered by the inspector to the seller, and the inspection fees are not in the nature of a license fee, as that word is used in the statute. *Norfolk* v. *Flynn*, 101 Va. 473, 99 Am. St. Rep. 918.

The sections of the ordinance under which this suit is instituted are held to be valid and are severable from the other provisions of the ordinance. Therefore we have not examined and discussed all the provisions of the ordinance, and do not pass upon the validity of those not called in question by this action.

In the case of *Vinsant* v. *Knox*, 27 Ark. 276, it was held that the style of the laws as provided by sec. 19, art. 5 of the Constitution is essential to the validity of an act. The act under consideration is "Be it enacted by the People of the State of Arkansas." The views already expressed render it unnecessary for us to decide whether the style of laws passed by the General Assembly has been changed by the amendment to our Constitution providing for the initiative and referendum.

The decree will be affirmed.