CITY OF TEXARKANA *v.* BRACHFIELD.

4-7431                                    183 S. W. 2d 304

Opinion delivered October 23, 1944.

A. G. Sanderson, Jr., for appellant.

Bert B. Larey and T. B. Vance, for appellee.

McFADDIN, J. This appeal presents for determination (1) whether a city of the first class has authority to require hotels therein to be licensed and regulated by the city, and (2) whether the procedure employed by the city of Texarkana in this case was valid and lawful.

City Ordinance No. B-439, entitled "an ordinance to provide a new method of licensing rooming houses and hotels," may be summarized by sections, as follows:

"Section 1. That it shall be unlawful for any person to operate a hotel without obtaining and having unrevoked at all times a license under this ordinance.

"Section 2. Each applicant must give notice by publication of the intention to apply for license, and must then file application with the city council and produce at the hearing before the council reputable witnesses as to good moral character.

"Section 3. The license issued shall remain in force until revoked by the council; and this ordinance is in addition to all other ordinances as to occupation taxes, etc.

"Section 4. If any person employed at the hotel should be convicted of certain named offenses, then the city council would forthwith give notice to the licensee to appear and show cause why the license should not be revoked; and the burden would be on the licensee to justify himself.

"Section 5. Any person convicted of operating a hotel without a license under the ordinance should be fined twenty-five dollars for each day of such operation."

On March 10, 1942, appellee, Mrs. Claire Brachfield, obtained a license under the said ordinance to operate the Claire Hotel. On January 25, 1944, the city council, by resolution, issued a notice to Mrs. Brachfield to show cause why her license should not be revoked. It was specified in the said resolution and notice that intoxicating liquor had been illegally sold at the hotel; that the

premises had been operated as a bawdy house; and that immoral conduct, gambling and drinking had been knowingly permitted on the premises.

Mrs. Brachfield filed, with the city council, her "response," in which she challenged authority of the city to pass and enforce such an ordinance, claiming (1) that the ordinance was void as beyond the power of the city, and (2) that she was a citizen of Texarkana, Arkansas, and had never been indicted or convicted of any offense, and was entitled to due process of law in a court of proper jurisdiction before her hotel could be closed, or property rights taken from her.

The city council, on February 8, 1944, adopted a resolution finding as a fact that prostitution and gambling and illegal sale of liquor had been permitted at the hotel (but not finding that Mrs. Brachfield had done any of these things); and also finding that one of the employees of the hotel had been convicted of "hustling" for prostitutes on the premises of the hotel, and that such employee had been retained in the employment of the hotel after such conviction. The resolution also declared the Claire Hotel to be a bawdy house, and revoked the license issued under ordinance No. B-439, and ordered the hotel closed, and directed the chief of police to notify Mrs. Brachfield and to take "whatever further steps that may be necessary to close the premises known as the Claire Hotel."

On February 9, 1944, Mrs. Brachfield filed in the Miller circuit court her petition for writ of certiorari against the city and its mayor and chief of police, to have the said ordinance, resolutions and order declared void. In response to the writ, the city certified the ordinance and council proceedings and order, as herein mentioned; and the city demurred to the petition for certiorari, and claimed the lawful authority to do the acts that had been done. The cause was heard on the pleadings and writings as mentioned, and the circuit court entered an order adjudging the action of the city and its officers to be void, and restraining the closing of the

Claire Hotel. From that judgment, the city of Texarkana has appealed. We state and discuss the questions presented.

I. *Does a city of the first class have authority to require hotels therein to be licensed and regulated by the city?*

Appellee cites *Bragg* v. *Adams*, 180 Ark. 582, 21 S. W. 2d 950, as answering the question in the negative. We proceed to examine that case. In *Bragg* v. *Adams* the incorporated town of West Memphis sought to regulate a hotel, and this court held that an incorporated town had no such authority. Mr. Justice BUTLER, in that opinion, pointed out that § 17 of Act No. 1 of 1875 (later § 5454, Kirby's Digest) gave the power to all municipalities to regulate hotels; but that Act 376 of the General Assembly of 1917 eliminated that power. Mr. Justice BUTLER also pointed out that by Act No. 210 of 1917, the State Board of Health was given power to regulate the sanitary conditions of hotels. So it was decided in *Bragg* v. *Adams* that an incorporated town had no authority to regulate a hotel. But it was there carefully pointed out that cities of the first class possess greater powers than incorporated towns. The opinion, after distinguishing *Carpenter* v. *Little Rock*, 101 Ark. 238, 142 S. W. 162, as not applicable to an incorporated town, said:

"As cities of the first class have enlarged powers over incorporated towns, given by § 7684, C. & M. Digest, and as the case of *Carpenter* v. *Little Rock, supra,* was controlled by that provision of law, its decision can have no application to the case at bar."

So the most that can be said of *Bragg* v. *Adams* is, that the power of all municipalities under § 17 of Act No. 1 of 1875, to regulate hotels, has been removed; and the city of Texarkana must find some other legislative enactment to sustain the ordinance here involved. The case does not answer the posed question.

As authority for the power to enact and proceed under its ordinance No. B-439, the city cites three sec-

tions of Pope's Digest, being 9543, 9589 and 9944. We examine these:

Section 9543 of Pope's Digest was § 7494 of C. & M. Digest, and was § 22 of Act No. 1 of 1875; and of that section Mr. Justice BUTLER said, in *Bragg* v. *Adams:*

"Section 22 (§ 7494, C. & M. Digest) provided for enactment of ordinances to carry into effect the powers conferred by the provisions of the act, and did not enlarge the powers conferred by the special provisions. *Tuck* v. *Town of Waldron,* 31 Ark. 462."

So this § 9543 of Pope's Digest did not enlarge any power of municipalities as regards hotels, and affords appellant no support.

Section 9589 of Pope's Digest was § 7529 of C. & M. Digest, and was § 12 of Act No. 1 of 1875; and in *Bragg* v. *Adams,* Mr. Justice BUTLER explained fully why the power to regulate hotels did not come within the purview of this section. So we dismiss that section, as affording the appellant no support.

There is thus only left § 9944 of Pope's Digest as a claimed source of authority for the city to enact and proceed under its ordinance No. B-439. This § 9944 of Pope's Digest was § 7748 of C. & M. Digest; and was originally —as regards cities of the first class—the 4th subdivision of § 3 of Act 67 of 1885 (p. 96), which act was entitled "For the better government of Cities of the First Class, and to confer enlarged and additional powers on such Cities," etc. This act of 1885 clearly enlarged the powers of cities of the first class, for it gave these cities, *inter alia,* the power ". . . to prevent or regulate the carrying on of any trade, business or vocation of a tendency dangerous to the morals, health or safety . . ." This was a power over all business. When the legislature, by Act No. 376 of 1917, amended § 5454, Kirby's Digest, so as to remove from other municipal corporations the power to regulate hotels, it left undisturbed this power of cities of the first class under the act of 1885, *supra,* "to prevent or regulate the carrying on of any trade,

business or vocation of a tendency dangerous to the morals, health or safety . . .''; and that power still exists in cities of the first class.

The operation of a hotel is certainly a business or vocation (11 Am. Jur. 1148). If the operation of a hotel has a tendency to become dangerous to the morals, health or safety of a city of the first class, then the city has under the quoted language—a regulatory power. It is not an unlimited power; it extends only to the matter of morals, health or safety of the city. Under the same language quoted from the Act of 1885, we have approved ordinances of cities: regulating the sale of milk and meat (*Carpenter* v. *Little Rock,* 101 Ark. 238, 142 S. W. 162); regulating soda fountains (*Kirby* v. *Paragould,* 159 Ark. 29, 251 S. W. 374); and regulating wiener stands (*Newport* v. *Young,* 173 Ark. 785, 293 S. W. 711). Certainly a hotel where food is served, towels and linens used, etc., is in the same comparative category as places serving milk, meat, sausages and fountain drinks. A hotel used for illegal purposes, such as gambling, prostitution, etc., is dangerous to the morals of the community. A place where unwholesome food is served is dangerous to the health of the community. The statute covers both morals and health.

Act No. 210 of 1917 empowered the State Board of Health to promulgate sanitary rules for hotels, and have some form of inspection. But that act did not take away from cities of the first class the power over hotels, as allowed by § 9944, Pope's Digest, except that the rules and inspections made by the State Board of Health, within the scope of the purpose in view when the state act was passed, are superior to any municipal regulation, since the State Board of Health authority is the latest legislative expression.

The Supreme Court of Indiana, in *Spitler* v. *Town of Munice,* 214 Ind. 75, 14 N. E. 2d 579, 115 A. L. R. 1395, pointed out that the action of the state legislature in empowering the State Board of Health to regulate (in that case) tourist courts, did not take away from the municipality the right to also establish reasonable regulations

for the protection of the health and safety of the citizens of the municipality, so long as the municipal regulations were not contrary to the regulations promulgated by the State Board of Health. We subscribe to the same holding.

In 28 Am. Jur. 558, in discussing the municipal regulation of hotels, it is stated:

"The business of keeping a hotel, lodginghouse, boardinghouse, restaurant, or similar place is one so far affecting the public health, morals, or welfare, that it is competent for the legislature, in the exercise of the police power, to authorize municipal corporations to regulate such businesses. As in other cases, however, the regulation must be reasonable, and not arbitrary. The power to regulate does not carry with it the power to prohibit lawful businesses or amusements. . . . Municipalities may, however, have power to pass such an ordinance under statutory authority to license and regulate all industries, pursuits, professions, and occupations, and the power to regulate the sale of articles of food has been held sufficient to sustain a regulation of the sale of cooked food in restaurants. The existence of state regulations on the subject, or the fact that some other governmental agency, such as the board of health, has been authorized to regulate the subject, does not necessarily preclude the exercise of such power by a municipality."

So, we conclude that a city of the first class has, under § 9944, Pope's Digest, the power to regulate hotels; and the limit of the power being the protection of the morals, health and safety of the city; and the case of *Bragg* v. *Adams* is not to the contrary.

II. *Was the regulatory procedure employed by the city of Texarkana in this case a valid and lawful procedure?*

We conclude that the procedure adopted in this case was in fact substantive rather than merely administrative, and was in excess of the city's authority. We demonstrate this by considering the cumulative effect of (a) the ordinance, and (b) the action of the council.

(a) *The Ordinance.*

The first sentence of § 4 of the ordinance B-439 reads:

"Section 4. Whenever any person is convicted for any act of prostitution, 'pimping,' immoral conduct, or for gambling, or for selling, storing, or keeping intoxicating liquor upon the premises covered by the license granted hereunder, it shall be the duty of the chief of police to at once summon the licensee to appear before the next regular meeting of the council to show cause why the license should not be ordered canceled and such hotel, rooming house, or lodginghouse ordered closed."

The municipality had the right to provide by ordinance that a hotel could not operate after it had been found by a court of competent jurisdiction that the particular hotel was being operated by that proprietor in a manner dangerous to public morals, health or safety. But the adjudication must have been made by a court of competent jurisdiction. Even in the case of a nuisance, this court in *Lonoke* v. *C., R. I. & P. Ry. Co.*, 92 Ark. 546, 123 S. W. 395, said:

"If it should be determined that said ordinance was legally passed, that would not necessarily make an actual nuisance the structure and things complained, if in law and in fact they do not come within the legal notion of a nuisance. In the case of *Yates* v. *Milwaukee*, 10 Wall. 497, (77 U. S. 497), 19 L. Ed. 984, Mr. Justice Miller says: 'But the mere declaration by the city council that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance unless it in fact had that character.' A municipal corporation cannot declare that a nuisance which upon judicial investigation is found not to be."

The principle of law above quoted applies here. The question occurs: When does a business, presumptively lawful, become unlawful, and how is the status ascertained? The right to carry on a *lawful* business is a property right. *Local Union* v. *Stathakis*, 135 Ark. 86, 205 S. W. 450, 6 A. L. R. 894. See, also, 11 Am. Jur. 1148. Before Mrs. Brachfield's property rights could be taken from

her, she was entitled to a hearing in a court of competent jurisdiction. The ordinance attempted to take from her the right to operate her hotel by the declaration of the city council proceeding on its own initiative before itself as the hearing body. In 28 Am. Jur. 558, in discussing the power of a municipality to regulate hotels, it is stated:

"As in other cases, however, the regulations must be reasonable and not arbitrary. The power to regulate does not carry with it the power to prohibit lawful businesses and amusements."

In 35 L. R. A., N. S., 716, there is an annotation on the subject that the power to revoke a license once issued cannot be exercised in an arbitrary manner by a municipality.

(b) *The action of the council.*

The resolution of the city council of February 8, 1944, went beyond the ordinance No. B-439. The ordinance provided, in § 5, that any person convicted of operating a hotel after the cancellation of the license, should be fined twenty-five dollars for each day of such operation. But the resolution of the city council in the case of Mrs. Brachfield, went further than this. Assuming the authority to revoke, what were the resulting rights of the city? The resolution declared the license was revoked, and then stated:

"Section 3. That the Claire Hotel be, and is hereby, ordered closed. Section 4. That the Chief of Police of this City be, and he is hereby directed to execute this order . . . by taking whatever further steps that may be necessary to close the premises known as the Claire Hotel."

It will be observed that in the resolution the council not only revoked the license, but also directed the chief of police to close the hotel. If the resolution had merely canceled the license, then Mrs. Brachfield, by continuing to operate the hotel, would have forced the city to proceed against her for fine or for abatement; and in either event

784

she would have been able to attack the ordinance and resolution in a court of competent jurisdiction. But the council, in an apparent effort to cut off a judicial hearing, proceeded summarily to close the hotel; and the city thereby deprived Mrs. Brachfield of her right to be heard in a court of competent jurisdiction. This right is a sacred right, for which governments are established and maintained in democracies. Regardless of how deeply the city might have felt aggrieved by the conditions alleged by it to exist in the Claire Hotel, nevertheless the city should have invoked the aid of a court of competent jurisdiction, rather than proceeded summarily.

It appears that the judgment of the circuit court (1) held to be void all of the city ordinance attempting to impose regulations on hotels, and also (2) held to be void the city council resolutions and actions closing the hotel.

The circuit court reached the correct result on the whole case, so the judgment is affirmed after modifying it to strike so much of the judgment as holds that the city had no power to regulate hotels, and to strike so much of the judgment as is in conflict with this opinion. Affirmed.