George S. WHITING, Judith Silva and Daniel Silva, dba Judd's Frontier Club, Plaintiffs and Appellants,

v.

Charles R. CLAYTON, Mayor of Midvale City, Phillip C. Kemp, Moses M. Samowitz, Karl R. Snow, Richard N. Vincent, Donald J. Norton, Councilmen of Midvale City, and Midvale City, a municipal corporation, Defendants and Respondents.

No. 16543.

Supreme Court of Utah.

Sept. 3, 1980.

---

**9.** *Hansen v. Christensen*, Utah, 545 P.2d 1152 (1973); § 78 27 3, supra.

Nick J. Colessides, Salt Lake City, for plaintiffs and appellants.

Marc Nick Mascaro, Midvale, for defendants and respondents.

STEWART, Justice:

This appeal is from the district court's affirmance of the revocation of plaintiffs' beer and business licenses by the Midvale City Council.

Plaintiffs are partners who in December 1976 commenced a business operation known as Judd's Frontier Club. The club had a retail beer license issued by Midvale; it did not dispense hard liquor and was therefore not subject to the authority of the Utah Liquor Control Commission.

Numerous citizen complaints were made to the City of Midvale concerning boisterous and unlawful activities attributed to the club's patrons. Because of the complaints, the mayor of Midvale wrote letters to George S. Whiting, one of the partners, in September and November 1977 and stated that if effective and timely remedial action were not taken the City would consider suspension of the club's license. Subsequently defendants prepared a petition and notice of charges and an order to show cause, directing plaintiffs to appear before the City Council on April 26, 1978, and show cause why their licenses should not be suspended or revoked. Personal service was made upon plaintiff Judith Silva, a partner, and plaintiffs' attorney. Plaintiffs then brought a suit in district court seeking to restrain temporarily the revocation hearing. Plaintiffs' motion was denied, and Midvale rescheduled the hearing.

At the hearing Judith Silva, Daniel Silva, and plaintiffs' attorney were present, but no testimony was offered on plaintiffs' behalf. Their request for an opportunity to present evidence at a later time was denied. Several witnesses testified as to fights, noise, parking problems, loud and vulgar language, urinating in public, broken beer bottles and litter, abuse and destruction of private property, loss of income from rental units, loss of quiet enjoyment of residences, diminished property values, drag racing, and other problems that persisted in the immediate vicinity of the club and for which patrons of the club were found to be responsible.

On May 30, 1978, the Midvale City Council issued its findings of fact and order revoking plaintiffs' business licenses. The Council found that the conduct of the club's patrons was contrary to the public peace and morals; that the city police department was, at least occasionally, spending one–third to one–half of its time patrolling the club and its immediate vicinity; that violations occurred in connection with public dancing and the selling of beer while there was public dancing; and that the conduct of the club's patrons resulted in violations of § 7–2, the nuisance section of the City's intoxicating liquor ordinance.[1] The City also revoked the beer, business, and amusement licenses pursuant to § 7–18 of the intoxicating liquor ordinance.[2] In addition, the Council ordered the closure of the club within 48 hours.

Plaintiffs filed suit in district court challenging the Midvale City Council's order and the ordinances on which it was based. Plaintiffs obtained a temporary restraining order preventing implementation of the revocation order. The validity of the Midvale City Council order was the subject of a hearing in district court on June 12, 1979. Findings of fact, conclusions of law, and an amended order of judgment were entered on July 3, 1979. The court held that the City Council had acted within its authority and in a manner comporting with due process and equal protection requirements and that its order revoking the licenses was supported by competent evidence. The court also found the challenged ordinances to be constitutional.

Plaintiffs base their appeal on three contentions: (1) that the district court erred in not finding the revocation arbitrary and capricious and in affirming the City's revocation order; (2) that defendants failed to proceed under the statutory authority given to cities to abate public nuisances; and (3) that the district court erred in entering its June 25 order without supporting findings of fact.

■ Judicial review of license revocations by municipalities is limited to a determination whether the municipality acted within its lawful authority and in a manner that is not arbitrary or capricious. Unless there is a failure to meet these standards, the courts will not interfere in matters entrusted to the discretion of an appropriate tribunal. *Peatross v. Board of Comm'rs of Salt Lake County,* Utah, 555 P.2d 281 (1976). A city has broad discretion in granting, denying, or revoking beer licenses, but a business enterprise may not be deprived of a license without due concern for the property interest involved. *Anderson v. Utah County Board of County Comm'rs,* Utah, 589 P.2d 1214 (1979).

■ Midvale's intoxicating liquor ordinance provides for the revocation of a license when "necessary for the protection of public peace and morals." There is sufficient evidence in this record to establish significant public disturbances and unlawful activities on the premises and in the vicinity of plaintiffs' club. The district court properly determined that the Council had a reasonable basis for finding that the club's patrons created a nuisance pursuant to the terms of the liquor ordinance thereby providing a sufficient basis for revoking the club's beer license. This action was clearly

---

1. Section 7 2(d) provides:

    INTOXICATING LIQUORS. The words and phrases used in this ordinance shall have the meanings specified in the State Liquor Control Act unless a different meaning is clearly evident.

    NUISANCES: Any room, house, building, structure or other place or licensed premises where:

    ❋        ❋        ❋        ᵣ        ᵃ        ❋

    (d) Laws or ordinances are violated by licensees, agents, or patrons with the consent or knowledge of licensees upon such premises which tend to affect the public health, peace or morals are hereby declared to be nuisances.

2. Section 7 18 provides:

    INTOXICATING LIQUORS. The city council may with or without a hearing at its discretion, when in their opinion it is necessary for the protection of public peace or morals, refuse to grant any license applied for and may revoke any license at any time and in no such case need any cause be stated.
    . . .

within the authority and sound discretion of the City Council. *Kochendorfer v. Board of County Comm'rs of Douglas County,* 93 Nev. 419, 566 P.2d 1131 (1977).

█ This Court has previously ruled that a license revocation may be based on the existence of a nuisance as defined by ordinance. *Condas v. Board of Salt Lake County Comm'rs,* 5 Utah 2d 1, 295 P.2d 829 (1956), upheld the right of the County to revoke a beer license when the licensed premises became an unlawful nuisance as defined by the county ordinances. It is not necessary that there be a judicial determination that a public nuisance exists before a beer license may be revoked. In the instant case there is ample evidence to support the Council's action revoking the beer license.

█ However, the Midvale City Council also revoked the club's business license and three amusement licenses and ordered the business to close within 48 hours.

State law provides procedures for the abatement of a nuisance which, as defined in § 76–10–803, Utah Code Ann. (1953), as amended, has a detrimental effect on public comfort, health or safety, or which offends public decency. Plaintiffs contend that the City, in order to close their place of business for constituting an unlawful public nuisance, must follow the procedure set out in §§ 76–10–806 and 808, which provide:

> 76–10–806. Action for abatement of public nuisance.–The . . . city attorney of the city where the public nuisance exists, upon direction of the board of city commissioners . . . is empowered to institute an action in the name of the . . . city . . . to abate a public nuisance. The action shall be brought in the district court of the district where the public nuisance exists and shall be in the form prescribed by the Rules of Civil Procedure of the State of Utah for injunctions . . . .
>
> 76–10–808. Relief granted for public nuisance.–If the existence of a public nuisance as defined by subsection 76–10–803(1)(b) is admitted or established, either in a civil or criminal proceeding, a judgment shall be entered which shall:

> (a) Permanently enjoin each defendant and any other person from further maintaining the nuisance at the place complained of and each defendant from maintaining such nuisance elsewhere . . . .

A city is clearly empowered to institute nuisance abatement proceedings. However, a municipal ordinance that only authorizes revocation of the liquor license as a result of the creation of a nuisance cannot be used to circumvent the requirements of a statute with respect to the abatement of a public nuisance through injunction, see *City of Texarkana v. Brachfield,* 207 Ark. 774, 183 S.W.2d 304 (1944), nor can it be given effect beyond its scope and used as the basis for revoking other licenses.

We are referred by the City to no authority either in its ordinances or in state statutes which permit it to revoke the amusement and business licenses of the plaintiffs on the basis of an administrative finding of a nuisance. To this extent the City exceeded its authority in revoking these licenses and ordering the business closed.

█ Plaintiffs' final contention is that the entry of the original order of the district court on June 25, 1979, without supporting findings of fact, resulted in reversible error. Plaintiffs argue that their notice of appeal filed on June 27, 1979, removed the matter from the jurisdiction of the district court and that the court improperly granted defendants' "motion to amend findings and order" dated June 29. Findings of fact, conclusions of law, and an amended order of judgment were entered on July 3.

The district court clearly acted within its jurisdiction. Rule 52(b), Utah Rules of Civil Procedure, provides for post–judgment amendments to findings of fact and conclusions of law upon a motion made within ten days of the entry of judgment. The immediate filing of a notice of appeal cannot nullify a party's right to move for an amendment. As stated in Wright and Miller, *Federal Practice and Procedure* : Civil § 2582 (1971), in the commentary on Federal Rule 52(b), which is in accord with our rule:

A timely motion under Rule 52(b) terminates the running of the time for filing a notice of appeal and the full time for appeal commences to run and is computed from the entry of an order granting or denying the motion. This is true whether or not an alteration of the judgment would be required if the motion is granted. *A quick filing of a notice of appeal by one party cannot defeat the adverse party's right to have the district court consider the merits of a motion under Rule 52(b) filed within ten days after entry of the judgment.* [Emphasis added.]

See also *Valley Bank & Trust Co. v. Gerber,* Utah, 526 P.2d 1121 (1974). The entry of findings of fact, conclusions of law, and an amended order after plaintiffs' notice of appeal was not error.

We affirm the judgment of the trial court insofar as it upheld the revocation of plaintiffs' beer license but reverse as to the revocation of the other licenses and the order of closure. No costs are awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.