# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4145

_____

| | | |
|---|---|---|
| Northern Cheyenne Tribe, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Alphonso Jackson, in his official | * | District of South Dakota. |
| capacity as United States Secretary | * | |
| of Housing and Urban Development, | * | |
| | * | |
| Defendant - Appellee, | * | |

_____

Submitted: September 16, 2005
Filed: January 18, 2006

_____

Before LOKEN, Chief Judge, LAY and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Bear Butte is a mountain formation seven miles northeast of Sturgis, South Dakota. It is a site of great spiritual significance for certain Native American tribes. In February 2003, six tribes and an unincorporated association (collectively, "the Tribes") commenced this action against multiple defendants, seeking to enjoin construction of a shooting range near Bear Butte. The district court[1] preliminarily

_____

[1]The HONORABLE KAREN E. SCHREIER, United States District Judge for the District of South Dakota.

enjoined the United States Department of Housing and Urban Development (HUD) and its Secretary from disbursing additional funds to the State of South Dakota for construction of the shooting range. When HUD later determined that the shooting range would not generate necessary public benefits, South Dakota withdrew its funding and the developers abandoned the project. The Tribes then dismissed their claims as moot. The district court denied an award of attorneys' fees, concluding the Tribes are not prevailing parties under the Supreme Court's decision in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001). The Tribes appeal the denial of an award against HUD, arguing that the relief afforded by the preliminary injunction made them "prevailing parties" entitled to an attorneys' fee award. We disagree and therefore affirm.

## I.

The City of Sturgis and its Industrial Expansion Corporation (collectively, "the City") planned to purchase land and construct the shooting range. To fund the project, the City applied for and received a grant of $825,000 from funds allocated to the State of South Dakota under the Community Development Block Grant (CDBG) program established by Title I of the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 *et seq*. Under that program, HUD allocates funds to each State to support development projects by local governments. Once funds are allocated, the State makes awards to local governments without prior HUD approval, but HUD conducts periodic audits to ensure that the State is properly awarding grants and administering the program. <u>See</u> 24 C.F.R. § 570.493.

The Tribes filed their complaint against the Secretary of HUD, the City of Sturgis, and two private parties. The Tribes promptly moved for a preliminary injunction to prevent construction of the shooting range until the litigation was resolved. The Secretary moved to dismiss. The other defendants agreed to stay construction of the shooting range. The district court dismissed some claims but

granted a preliminary injunction against the Secretary and HUD based on the Tribes' claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Religious Freedom Restoration Act (RFRA). As the State had previously transferred some CDBG funds to the City, the practical effect of the preliminary injunction was to compel HUD to bar the State -- a non-party to the lawsuit -- from accessing additional CDBG funds for the shooting range project.

In June 2003, after conducting a periodic review of South Dakota's CDBG program, HUD advised the State that the Bear Butte shooting range project failed to satisfy any of the CDBG program objectives -- to benefit low and moderate income persons, to aid in preventing or eliminating slums or blight, and to meet other urgent community development needs. In September 2003, South Dakota responded by cancelling its CDBG grant to the City. With this loss of funding, the City abandoned its plans to build the shooting range. Defendants then moved to dismiss the lawsuit as moot; the Tribes agreed except for the issue of attorneys' fees. The court dismissed the complaint as moot but granted the Tribes additional time to move for an award of attorneys' fees. This appeal followed denial of that motion.

## II.

Congress has granted district courts discretion to award attorneys' fees to a "prevailing party" in an action to enforce RLUIPA or RFRA against the United States or its officials. See 42 U.S.C. § 1988(b); 28 U.S.C. § 2412(b). In Buckhannon, the Supreme Court rejected the "catalyst theory" then prevailing in the circuit courts, which permitted a plaintiff to recover fees if the lawsuit achieved the desired result through a voluntary change in the defendant's conduct. Instead, the Court held that, to be a prevailing party entitled to a statutory attorneys' fee award, a party must obtain a *judicially sanctioned* material alteration of the legal relationship of the parties to the lawsuit. 532 U.S. at 604-05; see Cody v. Hillard, 304 F.3d 767, 772-73 (8th Cir. 2002). Citing prior decisions, the Court noted in Buckhannon that court-ordered

consent decrees and enforceable judgments on the merits create the requisite material alteration in the parties' relationship. 532 U.S. at 604. By contrast, we have held that a judicially approved class action settlement, and a declaratory judgment awarding no relief, do not. See Christina A. v. Bloomberg, 315 F.3d 990, 992-93 (8th Cir. 2003); Sierra Club v. City of Little Rock, 351 F.3d 840, 845 (8th Cir. 2003).[2]

Here, the only relief the Tribes obtained in the lawsuit was a preliminary injunction that barred HUD from providing funds for construction of the shooting range from the time the injunction was entered until South Dakota canceled its block grant to the City. The issue, then, is whether that judicially sanctioned injunction effected the requisite material alteration in legal relationship to make the Tribes prevailing parties *against the federal defendant*. We review this issue *de novo*. Christina A., 315 F.3d at 992.

The Tribes first argue that they are prevailing parties because they "obtain[ed] an interim order granting them relief, even though their complaint ultimately [was] dismissed." It is of course literally true that every preliminary injunction effects some judicially sanctioned change in the parties' legal relationship. If that were all Buckhannon requires, then every recipient of a preliminary injunction becomes a

---

[2]The dissent in Christina A. and some of our sister circuits have misread that decision as limiting prevailing party status under Buckhannon to those who obtain consent decrees and judgments on the merits. See Christina A., 315 F.3d at 996 (Melloy, J., dissenting); Roberson v. Giuliani, 346 F.3d 75, 81-82 (2d Cir. 2003); Smith v. Fitchburg Pub. Schs, 401 F.3d 16, 23 (1st Cir. 2005). The issue in Christina A. was whether judicial approval of a private class action settlement under Fed. R. Civ. P. 23(e) was the equivalent of a court-ordered consent decree under Buckhannon. Our divided panel held it was not. As our later discussion in Sierra Club v. Little Rock made clear, the majority in Christina A. did not consider, and certainly did not foreclose, the question whether other types of court orders, such as declaratory judgments and preliminary injunctions, may ever result in the requisite judicially sanctioned material alteration in the parties' legal relationship.

prevailing party eligible for an attorneys' fee award. But when dealing with a non-final order such as a preliminary injunction, the argument ignores an important principle established by the Supreme Court well before <u>Buckhannon</u> and re-emphasized in the <u>Buckhannon</u> opinion:

> Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

<u>Hanrahan v. Hampton</u>, 446 U.S. 754, 758 (1980), quoted in <u>Buckhannon</u>, 532 U.S. at 603. Applying this principle, it is apparent that a preliminary injunction that grants only temporary relief pendente lite is not, without more, a judicially sanctioned *material* alteration of the parties' legal relationship within the meaning of <u>Buckhannon</u>. Thus, virtually every circuit court to consider the question has concluded that a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status. <u>See</u> <u>Thomas v. Nat'l Sci. Found.</u>, 330 F.3d 486, 493 (D.C. Cir. 2003); <u>John T. Ex Rel. Paul T. v. Delaware Cty.</u>, 318 F.3d 545, 558-59 (3rd Cir. 2003); <u>Dubic v. Green Oak Township</u>, 312 F.3d 736, 753-54 (6th Cir. 2002); <u>Race v. Toledo-Davila</u>, 291 F.3d 857, 858 (1st Cir. 2002); <u>Smyth v. Rivero</u>, 282 F.3d 268, 276-77 (4th Cir.), <u>cert. denied</u>, 537 U.S. 825 (2002). We agree.

The Tribes further argue that they are entitled to prevailing party status because they obtained relief based on the merits of their claims. Most of our sister circuits have concluded that some preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status. <u>See, e.g.</u> <u>Dupuy v. Samuels</u>, 423 F.3d 714, 723 & n.4 (7th Cir. 2005). We are inclined to agree. For example, the grant of a preliminary injunction should confer prevailing party status if it alters the course of

a pending administrative proceeding and the party's claim a for permanent injunction is rendered moot by the impact of the preliminary injunction. See Role Models Amer., Inc. v. Brownlee, 353 F.3d 962, 966 (D.C. Cir. 2004); Watson v. County of Riverside, 300 F.3d. 1092, 1096 (9th Cir. 2002), cert. denied, 538 U.S. 923 (2003). That type of preliminary injunction functions much like the grant of an irreversible partial summary judgment on the merits.

Here, on the other hand, although the district court before issuing the preliminary injunction considered whether the Tribes were *likely* to prevail on the merits, as we required in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc), the court granted only interim relief that preserved the status quo until it could resolve the merits of the Tribes' claims. Moreover, in granting the preliminary injunction, the court primarily considered the merits of those claims against the other defendants, who had agreed voluntarily to stay construction of the shooting range. The court did not discuss whether those claims would entitle the Tribes to final relief on the merits against the Secretary, given HUD's relatively remote and indirect role in the shooting range project.

In the end, the Tribes achieved their desired result because of a regulatory action taken by HUD under the CDBG program for reasons unrelated to the merits of the Tribes' RFRA and RLUIPA claims, and because of voluntary decisions by the other defendants to abandon the shooting range project. In these circumstances, it would be ironic, to say the least, if the Tribes were awarded attorneys' fees against the defendant whose voluntary action triggered this result. We conclude that such an award is not authorized by the governing statutes and Supreme Court decisions. The Tribes obtained no relief on the merits of their claims against the Secretary. The preliminary injunction preserved one limited aspect of the status quo without in any way effecting a judicially sanctioned material alteration in the relationship between

the Tribes and HUD.  Accordingly, under <u>Buckhannon</u>, the Tribes may not be awarded attorneys' fees as prevailing parties.

The order of the district court dated September 28, 2004, is affirmed.

_____