# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3915

_____

| | | |
|---|---|---|
| Rogers Group, Inc., | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas. |
| City of Fayetteville, Arkansas, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 21, 2010
Filed: December 27, 2010

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Rogers Group, Inc. ("Rogers Group") brought suit in district court[1] against the City of Fayetteville, Arkansas, ("the City") seeking to prevent the enforcement of the City's ordinance regulating rock quarries in or near the City's corporate limits. The complaint alleged that the City lacked authority to license and regulate Rogers Group's quarry. Rogers Group moved for a preliminary injunction to enjoin the ordinance prior to its enforcement date, and the district court granted the preliminary injunction. On

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

appeal, the City argues that the district court erred in granting the preliminary injunction. We affirm.

## I. *Background*

Rogers Group operates a limestone quarry ("the Quarry") in an unincorporated section of Washington County, Arkansas. It began leasing the Quarry in February 2007. The Quarry is located entirely outside, but within one mile of, the corporate limits of the City. Rogers Group operates the Quarry pursuant to air and water quality permits issued by the Arkansas Department of Environmental Quality and additional permits issued by the Federal Mine Safety and Health Administration. Rogers Group also operates the Quarry as a preexisting, nonconforming use under Washington County's zoning ordinance. The Quarry is not located within the City's planning or zoning authority.

In early 2009, the City, responding to noise and vibration complaints from citizens living near rock quarries, began considering an ordinance to regulate and license rock quarries operating in or near the City's corporate limits. Although Rogers Group maintains that it never agreed to be regulated by the City and consistently denied that the City had jurisdiction over the Quarry, it participated in the City's ordinance drafting discussions and meetings. In fact, the City incorporated a number of Rogers Group's recommendations into the proposed ordinance. On October 20, 2009, the Fayetteville City Council passed Ordinance No. 5280, entitled "AN ORDINANCE TO PREVENT INJURY OR ANNOYANCE WITHIN THE CORPORATE LIMITS OF FAYETTEVILLE BY REGULATING ROCK QUARRYING FACILITIES SO THAT THESE FACILITIES WILL NOT BE NUISANCES" ("the Ordinance").

The Ordinance provides for the licensing and regulation of rock quarries. It purports to find that "the operation of a rock quarry would be a nuisance to the citizens and City of Fayetteville, Arkansas[,] if operated or used other than as prescribed in

[the Ordinance]." Thus, in order to operate a rock quarry within the City or one mile beyond the City's corporate limits, a quarry operator must obtain a license from the City after demonstrating its full compliance with all requirements of the Ordinance. The Ordinance limits quarry operations to a total of 60 hours per week and allows "major noise producing activities"[2] only between 8:30 a.m. and 4:30 p.m., Monday through Friday. Further, the Ordinance restricts rock blasting to a five-hour period on the first and third Wednesday of each month. In addition, a quarry must comply with several "safeguards and measures" to protect the City's roads from all vehicles, regardless of ownership, exiting the quarry.[3] An "operator, manager, or employee" of a quarry subject to the Ordinance may face criminal punishment for violating the Ordinance, and the quarry may have its license suspended or revoked for multiple violations. In addition, the City may fine the quarry for each violation of the operational hour and rock blasting restrictions.

At the preliminary injunction hearing, Darin Matson, Rogers Group's Vice President of Aggregate Operations, testified that Rogers Group would lose approximately $13,000 per week under the Ordinance's restrictions. Matson conceded that the Ordinance's blasting restrictions reflect the frequency of Rogers Group's current blasting operations. Nevertheless, Matson believed the blasting restrictions would limit Rogers Group's ability to bid on and meet larger customer orders. This restricted bid ability, in turn, would hinder its competitiveness in the Northwest

---

[2]The Ordinance defines "major noise producing activities" as all "blasting, rock breaking, dump truck tailgate banging, and the use by the quarry operator of non-static backup warning devices on its loader, breaker or other major equipment." The definition also includes "[r]ock crushing within a half mile of a house within the city limits."

[3]A quarry must ensure that (1) all vehicles exiting the quarry have "all mud and dirt removed from the tires and exterior parts of the body of the vehicles"; (2) certain dump trucks have properly covered their loads; and (3) all dump trucks have an identification number on their tailgates.

Arkansas market. Matson also testified that the Ordinance would restrict Rogers Group's ability to expand the Quarry. He considered future expansion necessary for the Quarry's long-term viability. Matson further stated that Rogers Group would have difficulty restoring its customer base upon reopening if the City closed the Quarry for violating the ordinance.

## II. *Discussion*

"We review the district court's grant of a preliminary injunction for abuse of discretion, giving deference to the discretion of the district court." *Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n*, 564 F.3d 900, 904 (8th Cir. 2009). "An abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." *Id.* In determining whether to issue a preliminary injunction, the district court must consider the following factors:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). On appeal, the City argues that the district court erred in granting the preliminary injunction for two reasons: (1) the City had jurisdiction to regulate the Quarry within one mile of its corporate limits, making it unlikely that Rogers Group would succeed on the merits; and (2) Rogers Group did not show that it would suffer irreparable harm if the Ordinance were allowed to go into effect. We review each of these arguments in turn.

A. *Probability of Success on the Merits*

The City first contends that Rogers Group is unlikely to succeed on the merits of its suit to enjoin the enforcement of the Ordinance. The City argues that it possessed statutory authority to regulate the Quarry because it enacted the Ordinance pursuant to Arkansas Code Annotated § 14-54-103(1). Under this statute, the City contends that it has broad regulatory authority both within and one mile beyond its corporate limits. Under the statute, the City's police power to abate a nuisance extends one mile beyond its corporate limits. Rock quarries, however, are not nuisances per se and normally, like other activities, must be declared so after a judicial determination. *See, e.g.*, *Hackler v. City of Fort Smith*, 377 S.W.2d 875, 875–77 (Ark. 1964). The City maintains that Arkansas law authorizes a city to exercise its broad regulatory power under § 14-54-103(1) to abate activity that a city by ordinance declares to be a nuisance. The City contends that the statute provides this authority—within or beyond corporate limits—without a previous judicial determination that a quarry is a nuisance.[4]

In Arkansas, "[m]unicipal corporations derive their legislative powers from the general laws of the state." *Phillips v. Town of Oak Grove*, 968 S.W.2d 600, 603 (Ark. 1998) (citing Ark. Const. art. 12, § 4). "A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared." *Id.* Here, the City asserts regulatory authority over the Quarry based upon § 14-54-103(1), which gives cities the power to "[p]revent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause

---

[4]The City relies on an Arkansas Attorney General opinion, stating that the City has the authority under Arkansas Code Annotated § 14-54-103(1) to determine whether a given activity is a nuisance. This opinion does not control our interpretation of Arkansas law, however, because attorney general opinions are not binding precedent under Arkansas law. *See, e.g.*, *Gray v. Mitchell*, 285 S.W.3d 222, 231 n.5 (Ark. 2008); *Klinger v. City of Fayetteville*, 732 S.W.2d 859, 860 (Ark. 1987).

any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102." In turn, the jurisdiction defined in § 14-262-102 extends "for one (1) mile beyond the city limits."

Section 14-54-103(1) grants cities two distinct powers. Within its corporate limits, a city may act to "prevent injury or annoyance . . . from anything dangerous, offensive, or unhealthy." This general police power allows a city to regulate or, in some cases, prohibit altogether the operation of an otherwise lawful business. *Phillips*, 968 S.W.2d at 606 (holding that a city could prohibit commercial swine and fowl businesses within city limits). In contrast, in the area one mile beyond its corporate limits, a city may only act to "cause any nuisance to be abated." Ark. Code. Ann. § 14-54-103(1). As the City has conceded, a city's power in the one-mile area beyond its corporate limits is more limited than its power inside its corporate limits. Indeed, it would render the second part of § 14-54-103(1) superfluous to find that a city's power one mile beyond its corporate limits is coextensive with its power inside its corporate limits—as the power to "prevent injury or annoyance" would surely include the power to abate a nuisance. *Cf. Citifinancial Mortg. Co. v. Matthews*, 271 S.W.3d 501, 506 (Ark. 2008) (stating the general principle of statutory construction that courts should "construe the statute so that no word is left void, superfluous or insignificant, and . . . give meaning and effect to every word in the statute, if possible"). Thus, while a city possesses limited authority to regulate businesses located within one mile of its corporate limits, those regulations must be directed "to cause any nuisance to be abated." The question remains, however, whether the City can, in essence, simply declare otherwise lawful conduct outside its corporate limits to be a nuisance.

The City can regulate the Quarry under § 14-54-103(1) only if the Quarry's activities constitute a nuisance. The City contends that Arkansas courts have interpreted § 14-54-103(1) to give cities broad authority to exercise their police powers to regulate businesses and, incident to that authority, to determine whether a given activity constitutes a nuisance. In other words, the City argues that it can

regulate the Quarry without a judicial determination that the quarrying activities constitute a nuisance. The cases on which the City relies, however, all involved a city's regulation of a business or activity *within* its corporate limits. *See Phillips*, 968 S.W.2d at 603–04 (upholding city's authority, pursuant to § 14-54-103(1), to prohibit businesses within city limits and finding that ordinance's validity did not depend on whether businesses were a nuisance); *Hackler*, 377 S.W.2d at 875–77 (finding that city could regulate, but not prohibit, rock blasting within city limits because rock blasting was not a nuisance per se); *City of Texarkana v. Brachfield*, 183 S.W.2d 304, 306–07 (Ark. 1944) (finding that a city could regulate a hotel located within the city); *City of Little Rock v. Reinman*, 155 S.W. 105, 106–08 (Ark. 1913) (finding that city could regulate livery stables located in the city even though the activity did not constitute a nuisance). In those cases, the city's statutory authority for regulating the activity within its corporate limits did not depend on whether that activity constituted a nuisance. Here, the City's statutory authority extends one mile beyond its corporate limits but only to abate a nuisance. Thus, the City can only regulate an activity beyond its corporate limits if the activity is, in fact, a nuisance. *See Ward v. City of Little Rock*, 41 Ark. 526, 529–30 (1883) (holding that a statute giving the city authority to abate a nuisance does not give the city authority to condemn an act that "does not come within the legal notion of a nuisance").

Under Arkansas law, a rock quarry is only a nuisance if a court of competent authority determines that it is a nuisance. The Arkansas Supreme Court has recognized that while a rock quarry may, under some circumstances, constitute a nuisance, it is not a nuisance per se—that is, it cannot be said to constitute a nuisance under all circumstances. *See Hackler*, 377 S.W.2d at 877; *Jones v. Kelley Trust Co.*, 18 S.W.2d 356, 358 (Ark. 1929). In turn, the Arkansas Supreme Court has long held that if an activity is not a nuisance per se, a city has no authority to legislatively declare that activity a nuisance absent express legislative authority to do so. *See Green Star Supermarket, Inc. v. Stacy*, 411 S.W.2d 871, 873 (Ark. 1967); *City of Piggott v. Eblen*, 366 S.W.2d 192, 195 (Ark. 1963) (citing cases); *City of Springdale v. Chandler*, 257

-7-

S.W.2d 934, 935 (Ark. 1953); *Town of Dardanelle v. Gillespie*, 172 S.W. 1036, 1037 (Ark. 1915). Instead, whether a given activity is a nuisance "is a question to be judicially determined in each case." *City of Arkadelphia v. Clark*, 11 S.W. 957, 958 (Ark. 1889).

In the present case, § 14-54-103(1) only grants authority to "cause any nuisance to be abated." There is no express authority to determine by ordinance whether something is a nuisance per se beyond the city's boundaries. Thus, the Ordinance's "Finding of Nuisance and Need for Abatement" did not confer on the City the authority to regulate the Quarry under § 14-54-103(1). Absent a judicial determination that the Quarry's activities constitute a nuisance, the City has no statutory authority to regulate the Quarry in the guise of abating a nuisance. Accordingly, the district court did not err in finding that Rogers Group was likely to succeed on the merits of its suit.

## B. *Irreparable Harm*

Next, the City argues that the district court erred in granting the preliminary injunction because Rogers Group failed to demonstrate that it would be irreparably harmed if the Ordinance were allowed to go into effect. The City argues that the dump truck regulations are the only provisions of the Ordinance that alter the Quarry's status quo. Because of the severability provision in the Ordinance, the City contends that a preliminary injunction, if any, should be limited to those regulations. The City asserts that any other harm that Rogers Group alleged was "wholly speculative" and cannot justify a preliminary injunction. On this point, the City notes that Matson, Roger's Group's Vice President of Aggregate Operations, acknowledged that the Quarry could continue operating at the same levels under the Ordinance. Matson stated that the Quarry's current operations were "sufficiently profitable," but that the restrictions might hinder future growth.

"Regardless of the strength of its claim on the merits, a movant for a preliminary injunction should show a threat of irreparable harm." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318 (8th Cir. 2009). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors*, 563 F.3d at 319. We have previously held that a district court did not err when finding that a loss of goodwill among customers was sufficient to establish a threat of irreparable harm. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). While a district court may choose to require more than a loss of goodwill to demonstrate irreparable harm, the district court ultimately has discretion to determine "whether an alleged harm requires more substantial proof." *Gen. Motors*, 563 F.3d at 319–20.

Here, the district court determined that Rogers Group established a threat of irreparable harm, finding that Rogers Group would suffer a loss of goodwill if forced to operate under the Ordinance's restrictions. While Matson did admit that the Quarry currently operated at a level the Ordinance permitted, he also testified that the Ordinance would prevent the Quarry from expanding. Without the ability to expand its operations, Rogers Group cannot bid on larger projects or accept projects on short notice. The ability to grow and accommodate its customers' demands, Matson testified, is critical to the Quarry's commercial viability. In addition, Matson testified that the dump truck restrictions would drive away customers. He further stated that even if Rogers Group ultimately prevails in the present action, any customers the Quarry loses—if and when the Ordinance goes into effect—would be unlikely to return once the Ordinance's restrictions are lifted. Based on this evidence, we conclude that the district court did not clearly err in finding that Rogers Group established a threat of irreparable harm.

### III. *Conclusion*

For the foregoing reasons, we affirm.

_____