# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2482

_____

| | | |
|---|---|---|
| Rogers Group, Inc., | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| City of Fayetteville, Arkansas, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 8, 2012
Filed: July 5, 2012

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

"Rogers Group, Inc. ('Rogers Group') brought suit in district court[1] against the City of Fayetteville, Arkansas, ('the City') seeking to prevent the enforcement of the City's ordinance regulating rock quarries in or near the City's corporate limits." *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 785 (8th Cir. 2010). The district court granted Rogers Group's motion "for a preliminary injunction to enjoin the ordinance prior to its enforcement date," and this court affirmed. *Id*. Following this court's affirmance, the City advised the district court that it repealed

_____

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

the ordinance "to preserve the viability of the Rock Quarry Operating License within Fayetteville's city limits and to avoid litigation expense." Rogers Group then moved for attorneys' fees and costs, arguing that it was a prevailing party. The district court granted the motion, concluding that Rogers Group was "entitled to a fee award under [42 U.S.C.] § 1988 even though the [c]ourt never reached the constitutional claims because the allegations in the complaint raised a substantial constitutional claim sufficient to confer jurisdiction, which is sufficient to support an award of fees under § 1988." The City appeals, arguing that Rogers Group is not a "prevailing party" entitled to an award of attorneys' fees pursuant to § 1988. We affirm.

## I. *Background*

"Rogers Group operates a limestone quarry ('the Quarry') in an unincorporated section of Washington County, Arkansas." *Rogers Group*, 629 F.3d at 785. "The Quarry is located entirely outside, but within one mile of, the corporate limits of the City." *Id*. It "is not located within the City's planning or zoning authority." *Id*. at 786.

The City passed an ordinance providing "for the licensing and regulation of rock quarries." *Id*. This ordinance found that "'the operation of a rock quarry would be a nuisance to the citizens and City of Fayetteville, Arkansas[,] if operated or used other than as prescribed in [the Ordinance].'" *Id*. (alterations in original). The ordinance provided that "to operate a rock quarry within the City or one mile beyond the City's corporate limits, a quarry operator must obtain a license from the City after demonstrating its full compliance with all requirements of the Ordinance." *Id*. It "limit[ed] quarry operations to a total of 60 hours per week and allow[ed] 'major noise producing activities' only between 8:30 a.m. and 4:30 p.m., Monday through Friday." *Id*. (footnote omitted). It also "restrict[ed] rock blasting to a five-hour period on the first and third Wednesday of each month." *Id*. Additionally, the ordinance stated that "a quarry must comply with several 'safeguards and measures' to protect the City's roads from all vehicles, regardless of ownership, exiting the quarry." *Id*. (footnote

omitted). The consequences of violating the ordinance included criminal punishment, fines, and revocation or suspension of a quarry's license. *Id*.

## A. *Complaint*

Rogers Group brought suit against the City in federal district court. In its complaint, Rogers Group stated that the district court had subject matter jurisdiction over the suit based on (1) diversity jurisdiction because the lawsuit was between citizens of different states and the amount-in-controversy exceeded $75,000, and (2) federal question jurisdiction because the complaint asserted rights arising from the Constitution and laws of the United States.

Count I of the complaint requested "declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–02." Count I asked the district court to "declare that the City has no authority to regulate or license the Quarry and further request[ed] that the Court enjoin the City from attempting to enforce the Ordinance against the Quarry." According to Rogers Group, under Arkansas law, the City lacked authority to regulate the Quarry, which was located entirely outside the City limits, "because a rock quarry is not a nuisance *per se*."

Count II asserted that the ordinance was "arbitrary, capricious, and unreasonable" and "denie[d] Rogers [Group] liberty and property without due process of law." According to Rogers Group, the ordinance "violate[d] the Due Process Rights conferred by the 14th Amendment of the United States Constitution and Article 2 Section 8 of the Constitution of the State of Arkansas." In Count II, Rogers Group claimed that no rational basis existed for the ordinance and asked the court to "declare that the Ordinance is invalid and enjoin the City from enforcing the Ordinance against Rogers [Group] or any other person or entity" under §§ 2201–02. Rogers Group also asked the court, "*[p]ursuant to 42 U.S.C. § 1983*," to "award Rogers [Group] damages in an amount commensurate with the damages it has

suffered, together with attorneys fees and costs incurred herein, and for all other proper legal and equitable relief." (Emphasis added.)

Count IV sought relief on a claim for an unconstitutional taking without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[2] Rogers Group asserted that it "ha[d] not been compensated for the taking of its vested rights to mine crushed stone in the Quarry and [was] entitled to just compensation in an amount determined at trial, or to an order enjoining enforcement of the Ordinance based on the City of Fayetteville's failure to provide just compensation." Rogers Group sought damages "*[u]nder 42 U.S.C. § 1983*." (Emphasis added.)

### B. *Preliminary Injunction*

Rogers Group moved pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction enjoining the City from enforcing or attempting to enforce the ordinance. The district court entered an order granting Rogers Group's motion for a preliminary injunction after analyzing the *Dataphase*[3] factors. The court acknowledged that, under Arkansas law, "whether a lawful activity is a nuisance must be judicially determined." (Citing *City of Texarkana v. Brachfield*, 183 S.W.2d 304 (Ark. 1944).) The court concluded that because "[n]o court has determined that [Rogers Group's] quarry is a nuisance," Rogers Group was likely to "prevail on the merits of its claim, based on lack of jurisdiction on the part of the City to legislate as to quarry activity outside its city limits." As a result, the court "f[ound] no need *to address the additional bases of [Rogers Group's] claims*." (Emphasis added.) Thus, the district court entered an order enjoining the City from enforcing the ordinance.

---

[2]Count III is not material to the present appeal. It sought relief on a claim for an unconstitutional taking without just compensation in violation of the Constitution of the State of Arkansas.

[3]*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981).

-4-

The City appealed the district court's preliminary-injunction order, and we affirmed. *See Rogers Group*, 629 F.3d at 787–90. Regarding the probability of Rogers Group's success on the merits, we concluded that "[a]bsent a judicial determination that the Quarry's activities constitute a nuisance, the City has no statutory authority to regulate the Quarry in the guise of abating a nuisance." *Id*. at 789. Therefore, we held that "the district court did not err in finding that Rogers Group was likely to succeed on the merits of its suit." *Id*.

## C. *Motions for Summary Judgment/Dismissal*

Following the appeal, the district court held a telephone conference call with the parties to discuss the status of the case—specifically, the pending motions for summary judgment. During this conference, the court expressed its view that, pursuant to the law-of-the-case doctrine, Rogers Group was entitled to partial summary judgment on Count I of its complaint. The court also indicated that, if it granted Rogers Group summary judgment on Count I, then such a ruling would likely render Rogers Group's remaining claims moot and would require the court to also deny the City's cross-motion for summary judgment as moot. The City requested additional time to discuss the matter with the City Council before the court entered orders on the pending motions. The court granted the City's request.

Thereafter, the City filed a "Report to the Court" in which it advised the court that the City Council had passed Ordinance #5393, which repealed and deleted the challenged provision in Ordinance #5280 that made it applicable to quarries operating outside of Fayetteville's city limits. The City advised the court that it took this action "to preserve the viability of the Rock Quarry Operating License within Fayetteville's city limits and to avoid litigation expense."

Rogers Group responded that, despite the new amended ordinance, it was still entitled to a final ruling on the issue of the City's authority to regulate rock quarries outside the city limits and that, based on the law of the case, Rogers Group was

entitled to partial summary judgment on that issue. Rogers Group conceded that, if the court granted partial summary judgment on that issue, the remainder of its claims would be moot and should be dismissed without prejudice.

Thereafter, the court issued an order, stating:

10. In the Court's view, the issue on which this case turned—whether the City (as it attempted to do by the enactment of Ordinance #5280) has the authority to regulate rock quarries outside the city limits absent a judicial declaration that such activity is a nuisance—has been decided adversely to the City's argument and that is the law of this case on that point. Further it is the Court's view that the City's action of replacing Ordinance #5280 with an amending ordinance not containing the unauthorized provisions has no bearing on the resolution of that issue.

Thus, because the City has now (apparently prompted by adverse holdings by this Court) eliminated the challenged provisions from its City Code, it appears to the Court that [Rogers Group] has succeeded in its challenge to the unauthorized provisions of Ordinance #5280 the same as if, in the absence of such action by the City, the Court had granted (as it would have) [Rogers Group]'s Motion for Partial Summary Judgment together with the injunctive relief sought by [Rogers Group] in connection with its challenge.

11. It follows therefore that, because of the City's action in replacing Ordinance #5280 with an amended ordinance, [Rogers Group]'s request for a declaratory judgment concerning the validity of the replaced ordinance is moot and it is unnecessary for the Court to further address that request.

12. It also follows that [Rogers Group]'s request for a permanent injunction is likewise moot because Ordinance #5280 is no longer in place or operative. Moreover, in light of the foregoing, the Court concludes that the remainder of [Rogers Group]'s claims are moot and they will be dismissed.

Therefore, the court held that both Rogers Group's motion for partial summary judgment and the City's cross-motion for summary judgment were moot. The court dismissed the case because no case or controversy existed.

D. *Motion for Attorneys' Fees and Costs*

Rogers Group then filed a motion for attorneys' fees and costs, seeking to recover $110,419.71 in attorneys' fees and costs incurred in prosecuting the action. The court granted the motion, finding that Rogers Group was a "prevailing party" because

* there was a court-ordered change in the legal relationship because the preliminary injunction blocked the City from enforcing Ordinance #5280—which the City had planned to do on December 1, 2010;

* the preliminary injunction was a judgment rendered in favor of the plaintiffs because it was an order from which an appeal could be—and in this case, was taken; and

* the preliminary injunction provided plaintiffs with "judicial relief" in the sense that the injunction prevented the implementation and enforcement of Ordinance #5280, which could have severely limited [Rogers Group] from operating and/or expanding [its] business. *See Rogers Group*, 629 F.3d at 790.

Furthermore, the court found that Rogers Group was "entitled to a fee award under § 1988 even though the [c]ourt never reached the constitutional claims because the allegations in the complaint raised a substantial constitutional claim sufficient to confer jurisdiction, which is sufficient to support an award of fees under § 1988." (Citing *Kimbrough v. Ark. Activities Assoc.*, 574 F.2d 423, 426–27 (8th Cir. 1978)).

## II. *Discussion*

The City argues that the district court erroneously awarded attorneys' fees to Rogers Group because it was not a prevailing party entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988. According to the City, Rogers Group obtained a preliminary injunction based upon its declaratory-judgment claim involving only the interpretation of a state statute that was "dissolved or otherwise undone" when the district court dismissed the claim as moot. As a result, the City asserts that Rogers Group is not a "prevailing party." The City contends that the district court erred by awarding attorneys' fees pursuant to § 1988 because Rogers Group prevailed *not* for a claim to protect federal or constitutional rights, but *only* on an issue of state statutory interpretation. The City asserts that mere allegations in a complaint of federal civil rights violations are insufficient to support an award of attorneys' fees under § 1988.

In response, Rogers Group argues that it is a prevailing party because it obtained a preliminary injunction that functioned like a grant of partial summary judgment on the merits of the lawsuit. According to Rogers Group, the district court—and this court on appeal—found that the City had acted unlawfully in passing the ordinance. Rogers Group asserts that although the City contends that it "voluntarily" amended the ordinance, it actually amended the ordinance after the district court and this court determined that the City had acted unlawfully. Additionally, Rogers Group maintains that the City reported to the district court that it modified the ordinance to preserve it—that is, to avoid having it invalidated. Under such circumstances, Rogers Group argues that the City's amendment is not "voluntary" and Rogers Group is a prevailing party. Additionally, Rogers Group maintains that it is entitled to an award of attorneys' fees pursuant to § 1988 because, although it prevailed on a state-law claim and the federal claims were never adjudicated, Rogers Group's state and federal claims were closely related, arising from the same common nucleus of operative fact.

-8-

Section 1988(b) of 42 U.S.C. provides that

> [i]n any action or proceeding *to enforce a provision of sections* 1981, 1981a, 1982, *1983*, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the *prevailing party* . . . a reasonable attorney's fee as part of the costs . . . .

(Emphases added.)

Thus, whether Rogers Group is entitled to attorneys' fees, depends upon (1) whether Rogers Group is a "prevailing party," and, if so, (2) whether it prevailed under § 1988 when its § 1983 claims were never addressed. *See Sole v. Wyner*, 551 U.S. 74, 77 (2007) (explaining that "[f]or private actions brought under 42 U.S.C. § 1983," Congress created "an exception to the 'American Rule'" in 42 U.S.C. § 1988(b), which "authorizes federal district courts, in their discretion, to 'allow the prevailing party . . . a reasonable attorney's fee as part of the costs'") (second alteration in original).

## A. *Prevailing Party*

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001). This "American Rule" sets forth "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Id.* (quotations and citation omitted). "Congress, however, has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes . . . , such as . . . the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988." *Id.* at 602–03; *see also Advantage Media, L.L.C. v. City of Hopkins, Minn.*, 511 F.3d 833, 836 (8th Cir. 2008) ("Congress has provided in 42 U.S.C. § 1988(b) that '[i]n any action or proceeding to enforce a provision of [various civil rights statutes including 42 U.S.C. § 1983] the

court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee a part of the costs . . . .'") (alterations in original). "Accordingly, a 'plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988.'" *Advantage Media*, 511 F.3d at 836 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

To obtain "an award of litigation costs," a party must be a "prevailing" or "successful" party, i.e., "one who has been awarded some relief by the court." *Buckhannon*, 532 U.S. at 603.

> In *Buckhannon*, the Supreme Court rejected the "catalyst theory" then prevailing in the circuit courts, which permitted a plaintiff to recover fees if the lawsuit achieved the desired result through a voluntary change in the defendant's conduct. Instead, the Court held that, to be a prevailing party entitled to a statutory attorneys' fee award, a party must obtain a *judicially sanctioned* material alteration of the legal relationship of the parties to the lawsuit. 532 U.S. at 604–05, 121 S.[]Ct. 1835; *see Cody v. Hillard*, 304 F.3d 767, 772–73 (8th Cir.[]2002). Citing prior decisions, the Court noted in *Buckhannon* that court-ordered consent decrees and enforceable judgments on the merits create the requisite material alteration in the parties' relationship. 532 U.S. at 604, 121 S.[]Ct. 1835.

*N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006). The Supreme Court dismissed the notion "that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after destination without obtaining any judicial relief." *Buckhannon*, 532 U.S. at 606 (quotation and citation omitted).

Following *Buckhannon*, the Supreme Court held that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S.

at 83 (footnote omitted); *see also id*. at 78 ("We . . . hold that a final decision on the merits denying permanent injunctive relief ordinarily determines who prevails in the action for purposes of § 1988(b). A plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded."). According to the Court, "[a] plaintiff who 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her],' has '[won] a battle but los[t] the war.'" *Id*. at 86 (alterations in original) (quoting *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)). Notably, the Court in *Sole* "express[ed] no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id*. Instead, the Court's holding was narrowly defined as stating "that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her." *Id*.

"We have recognized that a preliminary injunction can in some instances carry the judicial imprimatur required by *Buckhannon* to convey prevailing party status." *Advantage Media*, 511 F.3d at 837 (citing *N. Cheyenne Tribe*, 433 F.3d at 1086 ("[S]ome preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status.")). "For example, the grant of a preliminary injunction should confer prevailing party status if it alters the course of a pending administrative proceeding and the party's claim a for permanent injunction is rendered moot by the impact of the preliminary injunction." *N. Cheyenne Tribe*, 433 F.3d at 1086.

By contrast, "a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status." *Id*. (holding that plaintiffs were not prevailing parties where the district "court granted only interim relief that preserved the status quo until it could resolve the merits of the [plaintiffs'] claims" and, "in granting the preliminary injunction, . . . primarily considered the

merits of those claims against . . . other defendants"). These types of "preliminary injunctions have nothing to do with the merits, offering no insight into whether one party or the other will prevail at the end of the case." *McQueary v. Conway*, 614 F.3d 591, 600 (6th Cir. 2010). These "stay-put or status quo injunctions . . . turn more on the grave risks of irreparable harm to one party or to the public interest than on the legal virtues of the parties' positions." *Id*.

In determining whether a preliminary injunction creates prevailing-party status, the D.C. Circuit, analyzing *Buckhannon*, identified "three core principles" for a court to consider in "construing the term 'prevailing party' in federal fee-shifting statutes." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 946 (D.C. Cir. 2005).

> First, in order to be a prevailing party, a claimant must show that there has been a court-ordered change in the legal relationship between the plaintiff and the defendant. (Citing *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835.)
>
> Second, a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded. (*Citing Buckhannon*, 532 U.S. at 603, 121 S.Ct. 1835.)
>
> Third, a claimant is not a prevailing party merely by virtue of having acquired a judicial pronouncement unaccompanied by judicial relief. (Citing *Buckhannon*, 532 U.S. at 606, 121 S.Ct. 1835.)

*Id*. at 947 (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)).

We conclude that Rogers Group is a prevailing party for §1988 purposes. "First, there was a court-ordered change in the legal relationship between [Rogers Group] and the [City]." *Id*. The district court's preliminary injunction blocked the City from enforcing the ordinance—which the City had planned to do on December 1,

-12-

2010. *See id.* ("The trial court's preliminary injunction blocked enforcement of the new regulation that had been promulgated by the Secretary in December 2000."). "[T]he . . . preliminary injunction provided concrete and irreversible judicial relief to [Rogers Group] based on the [d]istrict [c]ourt's conclusion that [Rogers Group] [was] *likely to prevail on the merits*." *Id.* at 948 (emphasis added). In granting the preliminary injunction, the district court engaged in a thorough analysis of the probability that Rogers Group would succeed on the merits of its claim that the City lacked authority to regulate or license the Quarry; therefore, the preliminary injunction was not one that merely maintained the status quo. Instead, it "was a court-ordered change in the legal relationship between the parties." *Id.*

Second, "[t]he . . . preliminary injunction was a judgment rendered in favor of [Rogers Group]." *Id.* "The term 'judgment' includes 'a decree and any order from which an appeal lies.'" *Id.* (quoting Black's Law Dictionary 846 (7th ed. 1999)). Under 28 U.S.C. § 1292(a)(1), "preliminary injunctions are appealable orders." *Id.* Here, the City actually appealed the district court's grant of the preliminary injunction. Thus, "[t]he . . . preliminary injunction meets the legal definition of a judgment, and there is no dispute that it was rendered in [Rogers Group's] favor." *Id.* at 949.

Third, there is no doubt that Rogers Group received "judicial relief." *Id.* "Relief" is defined "as 'redress or benefit, esp. equitable in nature *(such as an injunction* or specific performance) that a party asks of a court.'" *Id.* (quoting Black's Law Dictionary 1293 (7th ed. 1999)). Here, Rogers Group "asked the District Court for equitable relief in the form of a preliminary injunction that would enjoin the implementation [and enforcement of the ordinance]." *Id.* "When the District Court issued the injunction, it granted [Rogers Group] the precise relief that [it] had requested." *Id.*

In determining that Rogers Group is a "prevailing party," we note that this is not a case in which the [City] voluntarily changed its ways *before* judicial action was taken. If the [City] had acted to moot this case through voluntary cessation before there was a judicially sanctioned change in the legal relationship of the parties, [Rogers Group] would not have been [a] "prevailing part[y]."

*Id.* "However, the record in this case demonstrates that the District Court's injunction, not the [City's] voluntary change in conduct, afforded [Rogers Group] the relief [it] sought"—an injunction blocking the City from enforcing the ordinance. *Id.*

### B. *Prevailed Under § 1988*

Having determined that Rogers Group is a "prevailing party," we must now determine whether "a plaintiff br[inging] a § 1983 claim that supports a grant of attorney's fees and another claim that does not" can be awarded attorneys' fees under § 1988 where "the [district] court found in favor of the plaintiff on the non-fee bearing claim but did not address the § 1983 claim." *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007).

In *Kimbrough v. Arkansas Activities Ass'n*, we considered "whether the fact that [the plaintiff] prevailed on a nonconstitutional ground render[ed] the case inappropriate for a discretionary award of attorney's fees [under § 1988]." 574 F.2d 423, 426 (8th Cir. 1978). We observed that § 1988 "does not squarely address the issue as to whether attorney's fees may be awarded when an action is brought under one of the enumerated sections but is decided on a nonconstitutional ground." *Id.* Nevertheless, we found that "[a] footnote to the Report of the House Judiciary Committee which accompanied the Act does . . . expressly approve of an award of fees under these circumstances." *Id.* This footnote provides:

"To the extent a plaintiff joins a claim under one of the statutes enumerated in [the Act] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a

-14-

determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the nonconstitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, *see Hagans v. Lavine*, *supra*; *United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorneys' fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact[.'] *United Mine Workers v. Gibbs*, *supra* at 725 [86 S.Ct. 1130]."

*Id*. (alterations in original) (quoting H.R. Rep. No. 1558, 94th Cong., 2d Sess. 4 n.7 (1976)). We noted that "[o]ther courts which have considered this issue have followed this unambiguous expression of congressional intent." *Id*. at 427 (citing *Seals v. Quarterly Cnty. Court of Madison Cnty., Tenn*., 562 F.2d 390, 393–94 (6th Cir. 1977); *Bond v. Stanton*, 555 F.2d 172, 174 (7th Cir. 1977); *Se. Legal D. Grp. v. Adams*, 436 F. Supp. 891, 884–95 (D. Or.1977)).

The "substantiality" test referred to in the House Judiciary Committee Report "is jurisdictional in nature." *Id*. Thus, before a district court can exercise federal pendent jurisdiction over a non-federal claim, it "must make the threshold determination that a substantial federal claim, arising from the same nucleus of operative fact, is raised by the allegations of the complaint. Without the existence of a substantial federal claim, no federal pendent jurisdiction over the non-federal claim exists." *Id*. In *Kimbrough*, we held that because "the [d]istrict [c]ourt . . . invoked jurisdiction and disposed of the case on non-federal grounds, it implicitly made the initial determination that the allegations of the complaint raised a substantial constitutional claim sufficient to confer jurisdiction." *Id*.; *cf. Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) ("The defendants do not contest that the plaintiffs are

-15-

entitled to an award of attorney fees under these federal statutes, even though the plaintiffs ultimately prevailed only on state constitutional claims.").

The City asserts that *Kimbrough* "is probably no longer valid after the much stricter attorney's fees standard announced" in *Buckhannon*. But in a post-*Buckhannon* decision, the Fifth Circuit observed, consistent with *Kimbrough*, that "where a plaintiff br[ings] a § 1983 claim that supports a grant of attorney's fees and another claim that does not, and the court f[inds] in favor of the plaintiff on the non-fee bearing claim but d[oes] not address the § 1983 claim," then

> such a plaintiff may obtain attorney's fees even though the § 1983 claim was not decided "provided that 1) the § 1983 claim of constitutional deprivation was substantial; and 2) the successful pend[e]nt claims arose out of a common nucleus of operative facts."

*Planned Parenthood*, 480 F.3d at 739 (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003)).

In the present case, Rogers Group stated in its complaint that the district court had subject matter jurisdiction over the action based on diversity jurisdiction and federal-question jurisdiction. Thus, Rogers Group had an independent basis for its state-law claim—diversity jurisdiction—and did not invoke the federal supplemental jurisdiction of the district court. But Rogers Group's failure to invoke federal supplemental jurisdiction does not mean that the district court would have lacked jurisdiction to hear the state-law claim if diversity jurisdiction did not exist. Thus, we must independently analyze whether Rogers Group's state-law claim could have been brought under the federal district court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all

other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

In Count I, Rogers Group alleged that, under Arkansas law, the City lacked authority to regulate the Quarry, which was located entirely outside the City limits, "because a rock quarry is not a nuisance *per se*." The district court, in granting the preliminary injunction, agreed with Rogers Group that the City lacked such authority under Arkansas law. The district court never reached Rogers Group's constitutional claims. But, in granting Rogers Group's motion for attorneys' fees and costs, the district court did conclude that Rogers Group was "entitled to a fee award under [42 U.S.C.] § 1988 even though the [c]ourt never reached the constitutional claims because the allegations in the complaint raised a substantial constitutional claim sufficient to confer jurisdiction, which is sufficient to support an award of fees under § 1988." We agree with the district court's conclusion and hold that if Rogers Group had invoked supplemental jurisdiction to bring the state-law claims, the district court could have concluded that the "allegations of the complaint raised a substantial constitutional claim sufficient to confer jurisdiction," as Rogers Group alleged in Count II that the ordinance violated the Due Process Clause of the Fourteenth Amendment and alleged in Count IV that the ordinance constituted an unconstitutional taking in violation of the Fifth and Fourteenth Amendments. Under both Counts II and IV, Rogers Group sought damages under § 1983. And, Rogers Group's claim that the City lacked authority under Arkansas law to regulate the Quarry—Count I— arises from the same "common nucleus of operative fact" as its federal constitutional claims. That is, all the claims concern the City's passage of an ordinance regulating rock quarries, including Rogers Group's Quarry.

Therefore, we hold that Rogers Group is a "prevailing party" entitled to an award of attorneys' fees pursuant to § 1988, even though the district court never reached its § 1983 claims.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____